# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



FILED
CLERK, U.S. DISTRICT COURT

JAN 4, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ BH _____ DEPUTY

Jerry Beeman & Pharmacy Services, Inc., d/b/a Beeman's Pharmacy, et al.

Plaintiffs,

v.

Caremark Inc., et al.

Defendants.

ED 02-cv-01327 VAP (KKx)
ED 04-cv-00407 VAP (KKx)

**Order Granting Motion for Terminating Sanctions Against Plaintiffs for Spoliation of Evidence.
(Doc. No. 399).**

On October 6, 2017, Defendants Express Scripts, Inc. and Medco Health Solutions, Inc. ("Defendants") filed a Motion for Terminating Sanctions Against Plaintiffs for Spoliation of Evidence ("Motion"). (Doc. No. 399).[1]  Defendants Argus Health Systems, Inc., Benescript Services, Inc., Prime Therapeutics, Inc., and First Health Services, Corp. have filed joinders to this motion.  (Doc. Nos. 400, 404, 405, 406).[2]  Plaintiffs filed their opposition to Defendants' Motion on October 30, 2017.  (Doc. No. 407). Defendants filed their Reply in Support of their Motion on November 20, 2017.  (Doc. No. 408).

---

[1] Unless otherwise indicated, all docket references are to Beeman et al., v. TDI Managed Care Servs., Inc., et al., Case No. 02-1327.

[2] With good cause showing, the Court hereby GRANTS these joinders.

After considering all papers filed in support of and in opposition to the motions, the Court Grants Defendants' Motion.

## I. BACKGROUND

### A.  Procedural Background

Because the parties are familiar with the facts, they are restated here only when necessary.

Plaintiffs are owners of retail pharmacies.  On December 5, 2002, they filed the above-captioned, putative class action (Case No. CV 02-1327), alleging that defendants are "prescription drug claims processors" ("PBMs") that (1) did not prepare a fee study mandated by California Civil Code § 2527; (2) failed to distribute such a fee study to their clients; or (3) prepared flawed fee studies.  (Doc. No. 1, ¶¶ 31–32).  On February 25, 2004, plaintiffs filed a second class action, Case No. CV 04-0407, alleging similar violations of California Civil Code § 2527 and California Business & Professions Code § 17200. (Case No. 04-0407, Doc. No. 1).

Civil Code § 2527(c) sets forth the formula for calculating a pharmacy's fee for the purpose of the studies.  The statute requires PBMs to apply this formula, then compile the data collected into a study report, which must include the information specified in § 2527(c).  PBMs are under an obligation, every two years thereafter, either to perform a new survey or to supply their clients with a copy of the previously transmitted study together with a notice of the cost of living changes (measured by the Consumer Price

Index) since the earlier study was prepared.  Cal. Civ. Code § 2527(d).  Any PBM that is not in compliance with the requirements of Civil Code § 2527 is prohibited from entering into any new contract with a licensed California pharmacy, performing the provisions of an existing contract with a licensed California pharmacy, or processing any prescription drug claims submitted by a licensed California pharmacy.  Id., at § 2527(a).

Civil Code § 2528 creates a private right of action for a PBM's violation of Civil Code § 2527.  That section imparts standing to sue upon owners of licensed California pharmacies that have a contractual relationship with, or render pharmaceutical services to, a beneficiary of a client of the offending PBM.  Id.  Successful plaintiffs are entitled to civil remedies between $1,000 and $10,000 per violation of Civil Code § 2527, injunctive and declaratory relief, and reasonable attorneys' fees and costs.  Id., at § 2528.

In July 2004, this Court granted Defendants' motion to dismiss in Case No. 02-1327, holding that plaintiffs had not sustained an injury-in-fact sufficient to confer Article III Standing.  (Doc. No. 155).  The Ninth Circuit reversed, concluding that the pharmacists had alleged a "procedural injury" sufficient to confer Article III standing.  See Beeman v. TDI Managed Care Servs., 449 F.3d 1035, 1039 (9th Cir. 2006).

Defendants then sought judgment on the pleadings on free speech grounds; this Court denied the motion in May 2007.  (Doc. No. 218).  In August 2007, the Court granted Defendants' motion for summary judgment, holding that because three of the plaintiff pharmacists had brought a parallel

United States District Court
Central District of California

suit in state court, <u>Bradley v. First Health Services Corp.</u>, Case No.
BC319292, and litigated that case to final adverse judgment, these plaintiffs
were barred under res judicata principles from pursuing their overlapping
claims in this action.  (Doc. No. 249).  On October 5, 2007, the Court
consolidated Case Nos. 02-1327 and 04-0407.  (Doc. No. 258; Case No.
04-0407, Doc. No. 303).

On July 19, 2011, a split Ninth Circuit panel affirmed this Court's denial
of defendants' motion for judgment on the pleadings on free speech
grounds.  <u>Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription
Mgmt., LLC</u>, 652 F.3d 1085, 1107 (9th Cir. 2011).  The Ninth Circuit granted
defendants' petition for rehearing en banc in October 2011, and later
certified the state law free speech question to the California Supreme Court.
<u>See</u> <u>Beeman v. Anthem Prescription Mgmt.</u>, 689 F.3d 1002 (9th Cir. 2012)
(en banc).  In December 2013, the California Supreme Court concluded that
Cal. Civ. Code § 2527, et seq. does not violate the California Constitution's
free speech protections.  <u>Beeman v. Anthem Prescription Mgmt.</u>, 58 Cal. 4th
329 (2013). The Ninth Circuit then vacated the panel opinion and remanded
the action to this Court for further proceedings. (Doc. No. 308).  Its mandate
issued on April 14, 2014. (Doc. No. 310).

Plaintiffs took no further action to prosecute the case until April 1, 2016,
when Plaintiffs filed a motion seeking preliminary approval of a class
settlement reached with defendant Cardinal Health MPB, Inc., f/k/a
Managed Pharmacy Benefits ("MPB") and certification of a settlement class.
(Case No. 04-0407, Doc. No. 389).

4

United States District Court
Central District of California

Ten days later, however, Plaintiffs filed a motion to substitute Carrie Lynn Warren McCarthy as successor in interest to Named Plaintiff Charles Miller. (Doc. No. 328; Case No. 04-0407, Doc. No. 393).  Miller and Anthony Hutchinson, the representative for the other named plaintiff Rocida, Inc., had died before the onset of the settlement negotiation: Miller on October 12, 2010 and Hutchinson[3] on March 30, 2012.  Their counsel, Michael Bowse and Alan Mansfield, did not inform MPB or any of the Defendants of their deaths until after the settlement was negotiated.

Defendants challenged the standing of the remaining plaintiffs as well as the proposed successor, and further asked the Court to deny class certification.  The parties conducted limited discovery on these matters and filed additional briefs.  After reviewing the matters, the Court found that McCarthy is Miller's successor, but that she and the remaining named plaintiff, Rocida, Inc., as well as their counsel, were inadequate to represent the class.  (Case No. 02-1327, Doc. 369; Case No. 04-0407, Doc. 455).

## B.  Destruction of Records

In the course of conducting limited discovery relating to class certification, Defendants learned that certain documents related to Plaintiffs' pharmacies had been destroyed.  Plaintiffs had not informed Defendants of this document destruction.

---

[3] Before his death, Anthony Hutchinson was a shareholder of Rocida, Inc., which has since been dissolved.  (See Doc. No. 369 at 19).

United States District Court
Central District of California

### 1.    The Corporate Representative for Plaintiff Rocida, Inc., Directed the Purchaser of Finley's Rexall Drug to Shred Documents and Erase All Electronic Records.

Joann Miner is the sole owner of Plaintiff Rocida, Inc.  (Doc. No. 407-2 at 2, ¶1).  From 1990 to 2008, she was the Chief Financial Officer of Rocida, Inc., and handled the bookkeeping for Rocida, Inc. and the pharmacy it owned, Finley's Rexall Drug.  (Id.).  On July 29, 2016, Defendants took the deposition of Miner in her capacity as the corporate designee of Rocida, Inc. (Doc. No. 399-1 at 21).

Miner testified that when the litigation was commenced, she was given an instruction to preserve documents that may be requested or necessary in the litigation.  (Doc. No. 399-1 at 26, 58:15-18).  When she was given this instruction, she understood that she was required to preserve certain records.  (Doc. No. 399-1 at 26-27, 58:24-59:1).  Despite her awareness of this obligation, Miner testified that "after quite awhile, [she] figured [the litigation] probably wasn't going to go anywhere, and [she] really didn't worry about it a lot."  (Doc. No. 399-1 at 26, 58:15-20; see also id. at 27 59:2-13).  Miner also testified that she only received "[a]n occasional phone call" from counsel about the case.  (Doc. No. 399-1 at 29, 79:12-80:8).

Miner testified that when Finley's Rexall Drug was sold in 2007, she "left almost everything" in the building, and told the new owners, NTN Corp., that they could shred documents after five years.  (Doc. No. 399-1 at 22, 45:15-22; id. at 28, 60:13-20).  Miner testified that these documents included Rocida, Inc.'s annual meetings minutes, financial statements, prescription

records, cash receipts, purchase records, contracts with pharmacy benefit managers, contracts with wholesalers or entities from which Rocida, Inc. was purchasing prescription drugs, payroll documents, and a list of accounts receivable that were being retained by Rocida, Inc. (Doc. No. 399-1 at 22-24, 45:4-47:5, id. at 26, 58:3-14). Miner also testified that she told the new owners that in 2012 they could erase electronic records from 1990-2009. (Doc. No. 399-1 at 47:16-24). She also testified that she did not retain any of the electronic records that she left with NTN, Corp. (Doc. No. 399-1 at 24-25, 25:2).

### 2. Former Plaintiff Charles Miller's Documents Were Damaged by a Flood and Discarded By Plaintiff Carrie Lynn McCarthy.

Plaintiff Carrie Lynn McCarthy is the stepdaughter and successor in interest to former plaintiff Charles Miller. (Doc. No. 407-1 at 17-18, 94:15-95:5). On August 16, 2016, Defendants deposed McCarthy. (Doc. No. 407-1 at 6). McCarthy testified that in August of 2010, she relocated to California to live in Miller's house at 6827 Neil Street, Riverside, California while Miller was suffering from cancer. (Doc. No. 407-1 at 10-11, 52:25-53:2; id. at 19, 96:4-13; id. at 14-15, 62:17-63:1; id. at 7, 17:19-21).

Before his death in October 2010, Miller informed McCarthy there was a pending lawsuit that would have to be finished. (Doc. No. 407-1 at 8-9, 50:14-51:2). Miller told McCarthy that the lawsuit was a class action, and that he was part of the class. (Doc. No. 407-1 at 9, 51:10-13).

United States District Court
Central District of California

After Miller's death, Plaintiffs' counsel waited years to contact McCarthy about the lawsuit, and it is not clear if Plaintiff's counsel ever informed her of her obligation to preserve documents.  Instead, McCarthy testified that since the time of Mr. Miller's death, she had "put" this case "on the back burner," and "[i]t wasn't something [she] thought about until [she] was contacted by [Plaintiffs' counsel Alan] Mansfield" in 2014.  (Doc. No. 407-1 at 9, 51: 10-21; id. at 33-34).

After Miller passed away, McCarthy continued living in the house on Neil Street.  (Doc. No. 407-1 at 14-15, 62:17-63:1).  In or around late January or early February 2011, the Neil Street house was flooded.  (Doc. No. 407-1 at 11, 53:6-10).  The flood affected three-quarters of the house and the entire garage.  (Doc. No. 407-1 at 53:14-17).  McCarthy testified that she had not taken any steps to preserve Miller's documents; many of them just happened to be in the garage at the time of the flood.  (Doc. No. 407-1 at 24-25, 169:24-170:3).

The flood affected "a lot of cardboard boxes" containing Miller's documents.  (Doc. No. 407-1 at 10, 52:5-10).  After the flood, McCarthy threw away all of the affected documents.  (Doc. No 407-1 at 11-12, 53:23-54:1).  Plaintiff did not go through them page by page; instead, instead, she glanced through the documents and threw away everything that had gotten wet.  (Doc. No. 407-1 at 12-13, 54:13-55:1; id. at 12, 52:2-9; id. at 24, 169:17-23 ("I had flooded, damaged boxes that I knew if I kept a hold of would create a mold issue, which potentially becomes a health hazard.  So everything that I had that was wet, mine, Charlie's, Yucaipa Valley

United States District Court
Central District of California

Pharmacy, anything that was in the garage was destroyed because of the damage it received.").

The destroyed documents contained the vast majority of Mr. Miller's personal and business documents; the only documents that McCarthy saved were Miller's death certificate and his army records.  (Doc. No. 407-1 at 25, 170:14-21).  McCarthy testified that she did not recall exactly the documents that were destroyed, but from her memory of looking at them as she threw them away, she believes they included tax records related to Miller's business.  (Doc. No. 407-1 at 12, 54:1-13).  McCarthy also testified that she no longer had any documents relating to the sale of the Yucaipa Valley Pharmacy after the flood.  (Doc. No. 407-1 at 25, 170:22-24).  McCarthy testified that she was not in contact with Plaintiffs' counsel when she discarded the affected documents.  (Doc. No. 407-1 at 13, 55:3-8).

## II.     LEGAL STANDARD

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence[,] in pending or reasonably foreseeable litigation.'"  Reinsdorf v. Skechers U.S.A. Inc., 296 F.R.D. 604, 625-26 (C.D. Cal. July 19, 2013) (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).

The court's authority to sanction a party for despoiling evidence derives from two sources: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Fed. R. Civ. P.] 37 against a party who 'fails to obey an order to

United States District Court
Central District of California

provide or permit discovery.'"  Leon v. IDX Sys. Corp., 464 F.3d 951, 958

(9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)).[4]


"A terminating sanction, whether default judgment against a defendant

or dismissal of a plaintiff's action, is very severe."  See Connecticut Gen.

Life Ins. Co., 482 F.3d at 1096.  "Only 'willfulness, bad faith, and fault' justify

terminating sanctions."  Id. (citations omitted).  The Ninth Circuit has

"confirmed the power of the district court to sanction under its inherent

powers not only for bad faith, but also for willfulness or fault by the offending

party."  Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d

363, 368 (9th Cir. 1992); Envt'l. World Watch v. Walt Disney, 630 F. App'x

687, 690 (9th Cir. 2015) ("Before awarding sanctions pursuant to its inherent

power, the court must make an express finding that the sanctioned party's

behavior . . . was tantamount to bad faith.") (internal quotation marks

removed).[5]


The Ninth Circuit employs a five factor test to determine whether a

terminating sanction is justified:  "(1) the public's interest in expeditious

resolution of litigation; (2) the court's need to manage its dockets; (3) the

---

[4] Here, Defendants have not identified a particular discovery order that has
been violated; therefore, the Court's analysis is based on the inherent power
to sanction.  Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982
F.2d 363, 368 (9th Cir. 1992) ("Rule 37(b)(2)'s requirement that there be
some form of court order that has been disobeyed has not been read out of
existence; Rule 37(b)(2) has never been read to authorize sanctions for
more general discovery abuse.").

[5] The Ninth Circuit has defined conduct "tantamount to bad faith" to include
"a variety of types of willful actions."  See B.K.B. v. Maui Police Dep't, 276
F.3d 1091, 1107–08 (9th Cir. 2002), as amended (Feb. 20, 2002).

risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." <u>Leon</u>, 464 F.3d at 958 ("While the district court need not make explicit findings regarding each of these factors, a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper [and] the district court must consider 'less severe alternatives' than outright dismissal.").[6]

"In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth. What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the [violation] threaten[s] to interfere with the rightful decision of the case." <u>Connecticut Gen. Life Ins. Co.</u>, 482 F.3d at 1097 (citations omitted) (internal quotation marks omitted). <u>Wyle v. R.J. Reynolds Indus., Inc.</u>, 709 F.2d 585, 591 (9th Cir. 1983) ("Sanctions interfering with a litigant's claim or defenses violate due process when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.").

---

[6] The same test is used to review both the propriety of Fed. R. Civ. P. 37 sanctions and sanctions issued under the Court's inherent power. <u>Leon</u>, 464 F.3d at 958 n. 4. The Ninth Circuit "use[s] cases involving dismissal under Rule 37 and inherent powers interchangeably." <u>Adriana Int'l Corp. v. Thoeren</u>, 913 F.2d 1406, 1412 n. 4 (9th Cir. 1990).

United States District Court
Central District of California

United States District Court
Central District of California

# III.    DISCUSSION

The Court first addresses whether Plaintiffs' conduct constituted willful

spoliation and then turns to balancing the five factors enumerated in Leon to

determine whether a terminating sanction is warranted.

## A.  Plaintiffs' Destruction of Documents Constituted Willful Spolia-tion.

Spoliation is considered "willful" if the party "has some notice that the

documents were *potentially* relevant to the litigation before they were

destroyed." Leon, 464 F.3d at 959 (internal quotation marks and citation

omitted) (emphasis in original).

As a preliminary matter, it is clear that Miner and McCarthy had an

obligation to preserve the documents at issue because they "should have

known that the evidence may be relevant to future litigation." Pringle v.

Adams, No. SACV 10-1656 JST (RZx), 2012 WL 1103939, at *7 (C.D. Cal.

Mar. 30, 2012), aff'd, 556 F. App'x 586 (9th Cir. 2014) (quoting In re Napster,

Inc. Copyright Litig., 462 F.Supp.2d 1060, 1068 (N.D.Cal.2006)); Biselli v.

Cty. of Ventura, No. CV 09-08694 CAS (Ex), 2012 WL 2061688, at *3 (C.D.

Cal. June 4, 2012) (finding that the litigants had an obligation to preserve

documents that had been requested in discovery regardless of whether it

was reasonably foreseeable that such documents would be relevant

evidence).  As discussed above in Section I.B.1, Miner had been given

instructions regarding document preservation, but after only sporadic

contact from Plaintiffs' counsel and the lack of progress in the litigation, she

determined – incorrectly – that she no longer had an obligation to preserve

these documents.  Similarly, McCarthy had been told by Miller that he was a plaintiff in a pending class action lawsuit related to his pharmacy business, but she did not do anything to preserve potentially relevant documents when he died.  (See Section I.B.2.).  Furthermore, Defendants had requested categories of documents included in the documents that were destroyed by Miner and McCarthy.  For example, in 2008, Defendant Express Scripts, Inc. served requests for production seeking several categories of documents related to Plaintiffs' pharmacy records and information related to the fee studies. (Doc. No. 399-1 at 97, 99-103 (Requests Nos. 15, 17, 19, 21, 22, 23, 24, 25, 26)).  As the corporate representative of Rocida and successor in interest of Miller (respectively), Miner and McCarthy should have known that the evidence at issue may be relevant to the litigation, and thus had an obligation to preserve these documents.

Because the documents were, at the very least, under their indirect control, both Miner and McCarthy were responsible for their destruction. World Courier v. Barone, No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007) ("[C]ourts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to or indirect control over such evidence."). See, e.g., Aiello v. Kroger Co., No. 2:08-CV-01729-HDM, 2010 WL 3522259, at *3 (D. Nev. Sept. 1, 2010) (finding willful spoliation where the spoliating party was on notice that the lost videotape, which was in its control, was potentially relevant to pending litigation, even though this loss was potentially not in bad faith).

United States District Court
Central District of California

In Miner's case, instead of preserving the documents she knew she had an obligation to protect, she told NTN Corp. that it could destroy vast swaths of documents related to Rocida, Inc.'s ownership of Finley's Rexall Pharmacy in 2012.  Miner was in direct communication with NTN Corp. about the documents at issue and has admitted to directing their destruction.  Although Miner now claims that some documents survived her direction to shred and erase documents, she does not demonstrate that all relevant documents survived or that the surviving documents ameliorate the damage that she directed.

Similarly, despite the knowledge of the pending litigation before the flood, McCarthy did not protect any of Miller's documents from damage nor did she contact Plaintiffs' counsel about the documents.  After the flood, McCarthy intentionally discarded all of the affected documents.  McCarthy made no effort to contact Plaintiffs' counsel to inquire about discarding the damaged documents, made no efforts to salvage the damaged documents, and did nothing to document the destruction so that Defendants could test her assertion that the documents were indeed unsalvageable.  As Defendants discuss in reply, if McCarthy had done more than simply throw the damaged documents away, it is possible that a specialist could have restored the documents.  (Doc. No. 408 at 9).

Therefore, even though Plaintiffs had an obligation to preserve potentially relevant documents under their control, they intentionally caused their destruction.  This constitutes willful spoliation.

**B. The Ninth Circuit's Five-Factor Test Indicates that a Terminating Sanction is Appropriate for Plaintiffs' Spoliation.**

Here, as in most cases, the first two factors – the public's interest in expeditious resolution of litigation, and the court's need to manage its docket – weigh in favor of the imposition of a terminating sanction. <u>See Wanderer v. Johnston</u>, 910 F.2d 652, 656 (9th Cir. 1990). While the fourth factor – the public policy favoring disposition of cases on their merits – "cuts against a default or dismissal sanction," as it does in most cases <u>id.</u>; however, this factor on its own is not determinative. <u>Pringle</u>, 2012 WL 1103939, at *10 (citing <u>Leon</u>, 464 F.3d at 960–61); <u>Dreith v. Nu Image, Inc.</u>, 648 F.3d 779, 788 (9th Cir. 2011).

"Thus, in determining whether the court should impose a terminating sanction against defendants, the key factors are prejudice and the availability of lesser sanctions." <u>See</u> <u>Davidson v. Barnhardt</u>, No. CV 11-7298 FMO (VBKx), 2013 WL 6388354, at *6 (C.D. Cal. Dec. 6, 2013) (citing <u>Wanderer</u>, 910 F.2d at 656). The Court will address the remaining two factors, in turn, below.

**1.     Risk of Prejudice to Party Seeking Sanctions**

"Prejudice is determined by looking at whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoiling party to rely on incomplete and spotty evidence." <u>In re Hitachi Television Optical Block Cases</u>, No. 08CV1746 DMS (NLS), 2011 WL 3563781, at *6 (S.D. Cal. Aug. 12, 2011) (citing <u>Leon</u>, 464 F.3d at 959).

United States District Court
Central District of California

Once spoliation has been shown, as here, the burden shifts to the
spoliating party to demonstrate that the non-spoliating party suffered no
prejudice.  Leon, 464 F.3d at 959 ("[B]ecause the relevance of destroyed
documents cannot be clearly ascertained because the documents no longer
exist, a party can hardly assert any presumption of irrelevance as to the
destroyed documents.") (internal quotation marks removed); Apple Inc. v.
Samsung Electronics Co., Ltd., 888 F.Supp.2d 976, 993 (N.D. Cal. 2012)
("In the Ninth Circuit, spoliation of evidence raises a presumption that the
destroyed evidence goes to the merits of the case, and further, that such
evidence was adverse to the party that destroyed it.");  Hynix
Semiconductor, Inc. v. Rambus Inc., 591 F. Supp. 2d 1038, 1060 (N.D. Cal.
2006) ("[I]f spoliation is shown, the burden of proof logically shifts to the
guilty party to show that no prejudice resulted from the spoliation" because
that party "is in a much better position to show what was destroyed and
should not be able to benefit from its wrongdoing"), rev'd on other grounds,
645 F.3d 1336, 1344–47 (Fed.Cir.2011); see also Stedeford v. Wal-Mart
Stores, Inc., No. 214CV01429 JAD (PAL), 2016 WL 3462132, at *8 (D. Nev.
June 24, 2016) ("[T]he party asserting prejudice must only come forward
with plausible concrete suggestions about what the spoliated evidence
might have been.") (internal quotation marks removed).

As discussed above, Defendants have demonstrated that willful
spoliation occurred.  (See Section IV above).  Plaintiffs' arguments in
opposition fail to rebut the presumption that the destroyed documents are
relevant, or that their destruction caused prejudice to Defendants.

a. <u>Plaintiffs Have Failed to Rebut the Presumption that the Destroyed Documents were Relevant.</u>

Although Defendants cannot know the full extent of the relevant documents destroyed by Plaintiffs, Defendants have been able to identify several categories of relevant documents that were likely included in the spoliation from the depositions of Miner and McCarthy.  (See, Doc. No. 399 at 24-27; Section II.B. above).[7]

In particular, Defendants show how at least some of the destroyed documents relate to the adequacy of the Section 2527 studies and Plaintiffs' pharmacy ownership.  (Doc. No. 399 at 24-25).  The Court agrees.  The Miner and McCarthy depositions indicate that the destroyed documents include those that would likely demonstrate "the pharmacy's usual charges for . . . commonly prescribed drug products" and "the average wholesale price of drug ingredients."  See Cal. Civ. Code § 2527(c).  As Plaintiffs admit in their opposition, these types of documents can be used to determine the information used to generate a Section 2527 fee study.  (Doc. No. 407 at 23 ("[T]hose materials are necessary and relevant to prepare a study that complies with the requirements of Section 2527(c) . . . .").  In addition, the business records destroyed by both Miner and McCarthy would also provide evidence relevant to determining pharmacy ownership, the pharmacies' contractual relationships, the services the pharmacies rendered, and correspondence with prescription drug claims processors – necessary

---

[7] In Opposition, Plaintiffs characterize the destruction of documents as limited to discrete categories of documents identified by Defendants.  (Doc. No. 407 at 7-9).  This mischaracterizes the indiscriminate and large-scale destruction described in McCarthy and Miner's testimony.  (See Section IV above).

United States District Court
Central District of California

United States District Court
Central District of California

elements to determine standing under Section 2528.  See Cal Civ. Code §

2528.

Plaintiffs assert that since the Section 2527 studies are available,

"[t]here is no need" to assess destroyed documents that would supply the

data that was used to prepare such studies.  (Doc. No. 407 at 24).  Similarly,

Plaintiffs also argue that since there are documents that show Plaintiffs'

pharmacy ownership, there is no need for the destroyed documents that

also relate to the ownership of the pharmacies.  (Doc. No. 407 at 24).  The

existence of some relevant documents says nothing about the relevance of

the destroyed documents, however.  Plaintiffs ignore the possibility the

destroyed evidence could undermine or contradict Plaintiffs' evidence.

Accordingly, Plaintiffs have not rebutted the presumption that the

destroyed documents are relevant to either the Section 2527 studies at the

heart of this case,[8] or documents relevant to determining Plaintiffs' standing

to bring their claims.[9]

---

[8] Plaintiffs also argue that because that the destroyed documents would not
be relevant to preparing a current or future study that complies with Section
2527, they are not relevant in this case.  (Doc. No. 407 at 24).    This misses
the point.  It is clear that the destroyed documents would not provide evi-
dence of current or future studies, since they were destroyed years ago.
Defendants' argument for why some of these documents were relevant is
based on their ability to shed light on past Section 2527 studies – the stud-
ies that Plaintiffs reaffirm are the dispute at the center of this case.  (Id.
("The dispute in this case concerns whether Defendants previously per-
formed studies that complied with Section 2527.").
[9] Since Plaintiffs have failed to rebut the presumption that the destroyed
documents are relevant to their claims, the Court need not address whether
the destroyed documents relate to any potential affirmative defenses.

b.  <u>Plaintiffs Have Failed to Rebut the Presumption that Defendants
Have Suffered Prejudice.</u>

Plaintiffs argue that Defendants are not prejudiced because some of the
documents that were destroyed are still available, or Defendants may be
able to obtain the same information from other sources.  The Court finds
these arguments unconvincing.

First, Plaintiffs assert they still have possession of some documents that
Miner previously indicated had been destroyed, and are withholding them
on the basis of their objections, not because the documents no longer exist.
(Doc. No. 407 at 10).  Miner has submitted a declaration in support of
Plaintiff's Opposition to Defendants' Motion, claiming that the "pre-2007
computer data of which NTN took possession is still kept on the computers
at Finley's Rexall Drug" and has "not been erased or destroyed."  (Doc. No.
407-2 at 2-3, ¶¶5-7).  Miner's declaration does not state that the surviving
electronic documents contain all of the information that was contained in the
shredded documents, however.  Miner also stated that she still has
possession of the historical financial statements of Rocida, Inc., but did not
describe what constitutes "the historical financial statements of Rocida,
Inc.," and how these documents will make up for the document destruction.
(Doc. No. 407-2 at 2-3, ¶¶8).[10]  Miner's sparse declaration does not

---

[10] To the extent that Miner is now claiming that she retained financial state-
ments other than those from 2002-2007, her declaration appears to contra-
dict her prior deposition testimony.  (Doc. No. 399-1 at 22-23, 45:23-46:6
("Q: Okay.  The documents that were left, we've – I understand they includ-
ed the minutes.  Would those have included financial statements?  A: I
probable have some of that still.  Q: Okay.  What financial statements do

demonstrate that Plaintiffs still have possession of all relevant and potentially relevant documents that were destroyed.

Next, Plaintiffs argue that Defendants have not suffered prejudice because the destroyed documents may still be available from third-party sources. (Doc. No. 407 at 13-14). These assertions are largely speculative. For example, Plaintiffs argue, without support, that some of Mr. Miller's documents that were damaged in the flood and discarded by McCarthy are "likely still available" in an electronic format. (Doc. No. 407 at 19). Even if such information were available from third party sources, Plaintiff has not demonstrated how these documents would adequately protect Defendants from the prejudice caused by the entirety of Plaintiffs' document spoliation.

Plaintiffs also argue that Defendants possess some documents that contain the same information as some of the documents that were destroyed by Plaintiffs. (Doc. No. 407 at 9-10, 14). This appears to contradict Plaintiffs' previous statements indicating they had sole possession of documents related to certain Section 2527 fee studies. See e.g., (Doc. No. 399-1 at 89, ¶ 4; Doc. No. 399-1 at 122, ¶ 4 (2003 declarations from Miller and Hutchinson stating that the information on

you believe you have? A: Probably not more than the last five years from – the previous five years before the corporation was dissolved.") The Court is entitled to disregard a deponent's declaration that directly contradicts prior deposition testimony without a reasonable explanation for the contradiction. Yeager v. Bowlin, 693 F.3d 1076, 1080-81 (9th Cir. 2012) (The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (internal quotations removed).

which a proper Section 2527 fee study must be based "is not provided in

any way to any of the defendants" and only available from pharmacists).

Plaintiffs have not rebutted the presumption that Defendants would

suffer prejudice.  The Court finds that at the very least, Plaintiffs' spoliation

would impair Defendants "ability to go to trial" by forcing Defendants "to rely

on incomplete and spotty evidence" in defending against Plaintiffs' claims.

See Leon, 464 F.3d at 959; Anheuser-Busch, Inc. v. Nat. Beverage

Distributors, 69 F.3d 337, 353–54 (9th Cir. 1995).  This would interfere with

the Court's ability to reach a rightful decision in this case; therefore this

factor weighs in favor of granting terminating sanctions.

### 2.    Availability of Less Drastic Sanctions

The fifth factor asks the Court to consider (1) the feasibility of less

drastic sanctions and why such alternative sanctions would be

inappropriate; (2) whether alternative sanctions were implemented before

ordering dismissal; and (3) whether the spoliating party was warned of the

possibility of dismissal before dismissal was ordered.  Leon v. IDX Sys.

Corp., 464 F.3d 951, 960 (9th Cir. 2006).  Nevijel v. N. Coast Life Ins. Co.,

651 F.2d 671, 674 (9th Cir. 1981) ("[T]he district court need not exhaust [all

sanctions short of dismissal] before finally dismissing a case. . . .[dismissal]

requires only that possible and meaningful alternatives be reasonably

explored, bearing in mind the drastic foreclosure of rights that dismissal

effects.").

Regarding the first criterion, the Court finds that lesser sanctions are not

appropriate.  "It is appropriate to reject lesser sanctions where the court

United States District Court
Central District of California

anticipates continued deceptive misconduct." <u>Connecticut Gen. Life Ins.
Co.</u>, 482 F.3d at 1097.  The Court finds that lesser sanctions would have no
effect on the sustained, deceptive behavior by Plaintiffs' counsel during this
litigation.  For example, in addition to hiding the spoliation at issue, Plaintiffs'
counsel did not inform the Court about their clients' deaths and did not
attempt to substitute named plaintiff Miller until after a settlement had been
negotiated.  Plaintiffs also have been sanctioned repeatedly for other
discovery violations.  (<u>See</u> Case No. 04-00407 Doc. Nos. 436, 449, 498).
That lesser sanctions have already been employed without success is
enough to determine that lesser sanctions should not be issued for the
violation at issue.  <u>See, e.g.</u>, <u>Davidson v. Barnhardt</u>, No. CV 11-7298 FMO
(VBKx), 2013 WL 6388354, at *8 (C.D. Cal. Dec. 6, 2013) (where monetary
sanctions had already issued for discovery violations without effect, "the
court does not believe that further sanctions, short of striking defendants'
Answer and entering default, are likely to have any effect.").

Furthermore, it is not clear that lesser sanctions would be feasible.  It is
unlikely that an order directing certain facts be taken as true would be any
different from dismissal.  An adverse inference jury instruction providing a
rebuttable presumption in Defendants' favor would still leave Defendants
without remedy if Plaintiffs introduce some evidence that overcomes such a
presumption.  <u>See</u> <u>Leon</u>, 464 F.3d at 960; <u>Espejo v. Lockheed Martin
Operations Support, Inc.</u>, No. CIV. 14-00095 HG-RLP, 2014 WL 6634492, at
*16-17 (D. Haw. Nov. 21, 2014).

United States District Court
Central District of California

The second and third criterion are inapplicable because Plaintiffs'
spoliation occurred well before the Court had an opportunity to warn
Plaintiffs of such malfeasance, let alone apply lesser sanctions.  Leon., 464
F.3d at 960 ("The second criterion is inapplicable here because Leon erased
the files and ran the wiping program before the district court had an
opportunity to compel discovery or otherwise order 'lesser sanctions.'
Likewise, the third criterion, which examines whether the district court
warned the party, is inapplicable here because the destruction of the
evidence occurred before the court had any opportunity to warn Leon.");
Internmatch, Inc. v. Nxtbigthing, LLC, No. 14-CV-05438-JST, 2016 WL
491483, at *12 (N.D. Cal. Feb. 8, 2016), appeal dismissed (June 10, 2016)
(same); Espejo, 2014 WL 6634492, at *17 (same).  The Court finds that this
factor weighs heavily in issuing a terminating sanction.

***

Given that four of the five factors weigh in favor of imposing terminating
sanctions, the Court finds that a terminating sanction in favor of Defendants
is warranted.

//

//

//

//

//

//

//

//

//

23

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED.  All of
Plaintiffs' claims against all defendants in this case are hereby DISMISSED
WITH PREJUDICE.

**IT IS SO ORDERED.**

Da

ted:    _____1/4/18_____                        _____
                                          Virginia A. Phillips
                                          Chief United States District Judge